**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bernard HAWKINS, Defendant-Appellant.**

No. 87–1072.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1987.

Decided June 17, 1987.

Dale Allen, Allen & Sarkisian, Merrill-vile, Ind., for defendant-appellant.

Patrick D. Hansen, U.S. Atty. Office, Hammond, Ind., for plaintiff-appellee.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The defendant, Bernard "Manny" Hawkins, appeals from his conviction on seven counts of illegal possession, transfer, and dealing in firearms, and one count of conspiracy to possess and transfer firearms. He alleges that neither the waiver of his *Miranda* rights nor his confession was voluntary. He also asserts that the trial court erred in admitting certain statements, and that the court improperly refused to give his proffered entrapment instruction. We reject each of these contentions, and affirm Hawkins' conviction.

I.

On January 15, 1985, Special Agent Frank Jury of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") met with Hawkins and a confidential informant at a Burger King in Hammond, Indiana. The confidential informant told Agent Jury that Hawkins had firearms to sell. The informant introduced Jury to Hawkins, telling Hawkins that Jury was a narcotics dealer affiliated with an organized crime family on the south side of Chicago. During this meeting, the defendant indicated that he had a large source of firearms, and indicated his willingness to exchange these firearms for cocaine. Hawkins and Jury reached an agreement that provided for the defendant to make a "sample delivery" of several firearms.

The next day, on January 16, the defendant telephoned Jury. The two arranged to meet at a McDonald's in Gary, Indiana. Jury paid $600 for the firearms that Hawkins brought to this meeting. Also at this meeting, Jury discussed with Hawkins the possible sale of fifty firearms in exchange for two ounces of cocaine and $1,000. Hawkins indicated that he had several "stashes" of weapons in the Gary area, and that he desired to do more "business" with Jury in the future. The defendant called Jury the next day to verify Jury's phone number, and again later that day to discuss the sale of fifty firearms.

After not hearing from Hawkins for approximately six weeks, Agent Jury called Hawkins and left a message. Hawkins returned the call, and stated that he wanted to meet Jury to sell him two firearms and to discuss another transaction. The two men met again at the McDonald's in Gary. At the meeting, Agent Jury was joined by Agent Klipfel of the ATF, whom he introduced as his girlfriend. The agents paid $300 for the two firearms. Hawkins stated that he had fifteen to twenty firearms that he would like to exchange for cocaine. The defendant told Agent Klipfel that "he wished to obtain a steady supply of narcotics in exchange for a steady supply of firearms ... that he would use the narcotics ... in conjunction with his gang called the One Way Gang to sell." Tr. v. III p. 78 (testimony of Agent Klipfel). The defendant also stated that other individuals in the restaurant witnessing the transaction were gang members.

On June 20, 1986, Hawkins was named in a seven-count indictment. The grand jury charged Hawkins with one count of conspiracy to possess and transfer unregistered firearms in violation of 18 U.S.C. § 371;

three counts of possession of unregistered firearms in violation of 26 U.S.C. § 5861(d); two counts of unlawful transfer of firearms in violation of 26 U.S.C. § 5861(e); and one count of unlicensed dealing of firearms, in violation of 18 U.S.C. § 922(a)(1).

On September 23, 1986, pursuant to a valid warrant, the Gary, Indiana police arrested Hawkins. He spent the night in the Gary City Jail, and the next day the United States marshals moved him to a detention room in the federal courthouse in Hammond, Indiana. Agent Jury walked into the detention room, and in response the defendant pulled his shirt in front of his face. Agent Jury testified that this was a "humorous gesture." Hawkins asserted that it was an attempt to shield himself from Agent Jury. However, Hawkins eventually gave a statement to Jury.

Prior to trial, Hawkins sought to suppress the statement that he had made to Jury. Hawkins argued that Jury did not read him his *Miranda* rights, and that he had neither voluntarily waived his rights nor voluntarily confessed. The district court found that the defendant had been read his *Miranda* rights and had voluntarily waived his rights. The district court also concluded that he had voluntarily given his statement to Jury. The court found that the defendant was not credible, and rejected his version of events surrounding his detention. Accordingly, the district court denied Hawkins' motion to suppress.

The jury found the defendant guilty on all seven counts. On appeal, he puts forth several challenges to his conviction, none of which we believe has merit.

## II.

■ Hawkins' first claim is that the district court erred in not suppressing the statement that he made to Agent Jury. He argues that he did not voluntarily waive his *Miranda* rights. As we have recently noted, whether a defendant waived his or her *Miranda* rights is a fact question subject to the clearly erroneous standard. *See Bryan v. Warden,* 820 F.2d 217, 220, (7th Cir.1987) (*citing Gorham v. Franzen,* 760 F.2d 786, 790 (7th Cir.), *cert. denied,* 474

U.S. 922, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985)).

The district court found that Hawkins was given his *Miranda* warnings, and based this determination on the credibility of the two witnesses. Furthermore, the court found that, at no time prior to giving the incriminating statement, did Hawkins indicate that he did not wish to speak to Jury. In fact, the court concluded, "the defendant exhibited his willingness to speak by calling the agent back for a second conversation. During the second discussion the defendant related information [that] he hoped would entitle him to lenient treatment by law enforcement authorities." *United States v. Hawkins,* No. 86 CR 66 at 5 (N.D.Ind. Nov. 6, 1986) (order denying motion to suppress incriminating statement).

■ The defendant argues that his waiver was not voluntary, and supports this contention by noting that although written waiver forms were readily available, Agent Jury did not attempt to have him sign one. The district court did not address the fact that, despite the availability of forms, the police did not obtain a written waiver of Hawkins' *Miranda* rights. The district court either did not consider this factor or considered it to be unimportant. We urge police officers to use written waiver forms, and district courts to consider whether or not one was obtained, because they are important aids in determining whether a waiver of *Miranda* rights was voluntary. However, the district court's failure to make express findings as to the lack of a written waiver is not reversible error. Therefore, because the defendant has not persuaded us to conclude otherwise, we find that the district court's conclusion that Hawkins waived his *Miranda* rights was not clearly erroneous.

■ The defendant also challenges the voluntariness of his confession. The ultimate issue of the voluntariness of a confession is a legal question requiring *de novo* review. *Cf. Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985) (requiring independent federal review of

the voluntariness of a confession in habeas cases).[1] Our review of the record convinces us that his confession was voluntary.

The defendant supports his contention that his confession was not voluntary by arguing that: he was detained overnight prior to giving his confession; Agent Jury did not read him his *Miranda* rights (although the district court found otherwise); and the government failed to obtain a written waiver. The mere fact that he was detained overnight does not, by itself, give rise to a conclusion that his confession was not voluntary. The district court found that he was read his *Miranda* rights, and this finding was not clearly erroneous. The failure of the police to obtain a written waiver does not necessarily mean that a confession was not voluntary. Finally, and most importantly, Hawkins does not assert that he was threatened, nor does the record show that he was subject to coercive interrogation techniques. In fact, the record does not even hint of subtle coercive pressure tactics.

What the record does show is that Hawkins most likely gave his statement with the hope of receiving lenient treatment from the government. Hawkins' mistaken belief that he would receive lenient treatment, did not cause his confession to be involuntary. *See United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987). We agree with the district court that, after reviewing the totality of the circumstances, the record definitely shows that the defendant's confession was not the product of coercive tactics. Therefore, Hawkins' confession was voluntary.

### III.

Hawkins also objects to the introduction of Agent Klipfel's testimony, which described a portion of a conversation between Hawkins and herself in which the defendant indicated his desire to trade guns for cocaine. Agent Klipfel testified that Hawkins had stated that he wanted to obtain the cocaine for his gang, and that the cocaine was to be sold. Hawkins alleges that this testimony should not have been admitted under Federal Rule of Evidence 404(b). We conclude that this statement was not a prior bad act with the meaning of Rule 404(b). Rather, because the statement was made during one of the drugs-for-guns transactions at issue, it was "intricately related to the facts of the case," *see United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L..Ed.2d 708 (1984).

Because this evidence was directly relevant to the crimes charged, we need only analyze this evidence under Rule 403, and decide whether the prejudicial aspects of this statement outweighed its probative value.[2] This evidence was clearly probative of Hawkins' motive for entering into the transactions at issue. Moreover, the testimony was not unduly prejudicial, because Agent Klipfel's testimony was brief and not inflammatory. Therefore, we conclude that the trial court did not abuse its discretion in concluding that the probative value of the defendant's motive for entering into the transactions clearly outweighed any prejudicial effect it may have had on the jury.

### IV.

Defendant's final contention is that the court erred in failing to instruct the jury on

---

1. Although *Miller* was a habeas case, its holding is equally applicable to cases coming to this court on direct review. In fact, in two recent decisions, this court has noted that the standard of review in evaluating a waiver of *Miranda* rights should be the same in both direct review and collateral review cases. *See Bryan v. Warden*, 820 F.2d 217, 220 (7th Cir.1987); *Perri v. Director*, 817 F.2d 448, 452, (7th Cir.1987). We see no reason why *Miller* should not be applicable to the standard of review we use in direct review cases when evaluating the ultimate issue of the voluntariness of a confession.

2. Rule 403 provides:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

 Fed.R.Evid. 403.

entrapment.[3] Hawkins asserts that, as a result of this failure, he was denied a fair trial. We conclude that the district court was correct in not providing the jury with an entrapment instruction, and reject the defendant's claim.

Some cases in this circuit have required a defendant to admit all elements of a crime, including the intent element, before he or she may plead entrapment. *See, e.g., United States v. Gabriel,* 810 F.2d 627, 637 (7th Cir.1987); *United States v. Mathews,* 803 F.2d 325, 327 (7th Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 1601, 95 L.Ed.2d 788 (1987). In this case, the record reflects that Hawkins did admit that the acts took place, but did not admit the intent element. The Supreme Court has granted *certiorari* in *Mathews* on the question of whether a defendant may use the entrapment defense when he or she admits committing all the relevant acts constituting the offense but denies the requisite intent element of the crime. *See Mathews,* 55 U.S.L.W. 3685 (Dec. 27, 1986). Because of the uncertainty surrounding the rule requiring a defendant to admit the intent element of a crime before being allowed to plead entrapment, we decide this case without reliance on that rule. Rather, we decide whether or not Hawkins put forth sufficient evidence entitling him to an entrapment instruction.

In *United States v. Douglas,* 818 F.2d 1317 (7th Cir.1987), we set forth a four-part test for deciding when a defendant is entitled to a particular theory of defense instruction. We held that, "a defendant is entitled to an instruction on his or her theory of defense if: the defendant proposes a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is

not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial." *Douglas* at 1320–21 (citation omitted). Applying *Douglas* to this case, it is clear that the defendant has not met the second prong of *Douglas:* his requested instruction was not supported by the evidence. Because the defendant failed to put forth the minimal amount of evidence necessary to show inducement and a lack of predisposition, the district court was correct in not giving the requested instruction.[4]

██ For a defendant to raise the entrapment defense, he or she must, "produce evidence of both the Government's *inducement* and his own lack of *predisposition.* Once a defendant accomplishes this, the burden shifts to the Government to prove beyond a reasonable doubt that the defendant was predisposed or that there was no Government inducement." *United States v. Perez-Leon,* 757 F.2d 866, 871 (7th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985) (emphasis added) (*citing United States v. Gunter,* 741 F.2d 151, 153 (7th Cir.1984). Both the inducement and predisposition inquiries require an examination of the facts. To prove inducement, a defendant must put forth some evidence showing that he or she would not have committed the crime had the particular attraction or lure that the government held out not existed. *See United States v. Manzella,* 791 F.2d 1263, 1269 (7th Cir. 1986). We have stated that a "predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." *United States v. Gabriel,* 810 F.2d

---

**3.** We note that several cases on which the parties rely are not on point. Both *United States v. Perez-Leon,* 757 F.2d 866 (7th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985), and *United States v. Gunter,,* 741 F.2d 151 (7th Cir.1984), are cases in which the jury was given an entrapment instruction, but nevertheless found the defendant guilty. In those cases, we reviewed the evidence to determine whether or not the jury was "justified in rejecting [the] entrapment defense," *Perez-Leon,* 757 F.2d at

872. Thus, those cases were concerned with the merits of the entrapment defense. In contrast, the issue in this case is whether the trial court correctly refused to give an entrapment instruction.

**4.** As we stated in *Douglas,* however, "A district court should state its reasons on the record ... if it declines to give an instruction on the defendant's theory of defense." *Douglas,* at 1321.

627, 637 (7th Cir.1987) (citations omitted). In *Perez-Leon,* we set forth a series of relevant factors used to determine the predisposition of a defendant. *Perez-Leon,* 757 F.2d at 871. In this case, the defendant has failed to put forth a sufficient amount of evidence of either element to warrant a jury instruction on entrapment.

██ We have previously held that a district court was correct in refusing to give the jury an entrapment instruction when the defendant had put forth insufficient evidence. *United States v. Buishas,* 791 F.2d 1310 (7th Cir.1986). In *Buishas,* we held that the district court was correct in refusing to instruct the jury on the entrapment defense "because of the absence of any evidence showing that Buishas was not predisposed to commit the crimes with which he was charged." *Id.* at 1313. In this case, as in *Buishas,* after making a *de novo* review of the defendant's proof, we conclude that the defendant has not put forth sufficient evidence to demonstrate either government inducement or a lack of predisposition.

The defendant's evidence of inducement consists of the fact that Agent Jury introduced himself to the defendant and that Jury was "selling himself" to the defendant. However, this evidence merely supports the conclusion that the agent was attempting to establish a credible cover. The defense of entrapment is not established by the mere fact that a defendant is fooled by a government undercover agent. *See United States v. Myers,* 692 F.2d 823, 835 (2d Cir.), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1982). Our review of the record leads us to believe that the inducement here—if any—was so minimal as not to tempt the defendant to commit a crime that he otherwise would not have committed. *See Manzella,* 791 F.2d at 1269.

The defendant has also failed to show the lack of predisposition that is necessary to have the jury receive an entrapment instruction. The defendant asserts that he was reluctant to enter into the transactions at issue here, and that this fact demonstrates his lack of predisposition to commit the crime. However, the record reflects that Hawkins' hesitation was no more than the normal hesitation that occurs in any situation in which a dealer enters into a new relationship with a prospective buyer. Agent Jury testified that in such transactions, the parties "feel each other out"— making sure the other is really a criminal and not an undercover agent. Moreover, the evidence shows that Hawkins was ready and willing to commit the crimes charged. He contacted Agent Jury twice after their initial meeting. Although Agent Jury called Hawkins after not hearing from the defendant for six weeks, the defendant showed no hesitation in arranging a meeting. Hawkins does not assert, nor does the record show, that he ever "expressed reluctance to commit the offense which was overcome only by repeated government inducement or persuasion," *Perez-Leon,* 757 F.2d at 871. As we stated in *Perez-Leon,* a defendant's failure to show reluctance is the most important factor which shows that he or she was predisposed to commit the crime. *Id.* The fact that Hawkins did not express any reluctance to commit the crime supports the conclusion that Hawkins has failed to make the showing of lack of predisposition sufficient to receive a jury instruction on entrapment. Therefore, our review of the evidence convinces us that the district court was correct in not instructing the jury on entrapment, because such an instruction was not supported by the evidence.

### V.

The defendant's objections to his conviction are without merit. His confession was properly admitted, as was the statement of his gang affiliation and plans to sell the cocaine. Finally, the district court properly refused to instruct the jury on entrapment.

AFFIRMED.