**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joe PARKIN, Defendant–Appellant.**

**Nos. 89–2302 and 89–2439.**

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1990.

Decided Oct. 31, 1990.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., Robert J. Eggers, Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

James W. Ackerman, Springfield, Ill., for defendant-appellant.

Before POSNER and KANNE, Circuit Judges, and SNEED, Senior Circuit Judge.[*]

KANNE, Circuit Judge.

This case involves the consolidated appeals of Joe Parkin following his convictions in two separate jury trials. One appeal is of his conviction for conspiracy and distribution of cocaine—the "Conspiracy and Cocaine Case." The other appeal is of his conviction for distribution of marijuana—the "Marijuana Case." We affirm the convictions.

### I.  Facts

#### A.  *The Conspiracy and Cocaine Case*

In case number 89–2439, the indictment charged Parkin with two counts. Count One alleged that Parkin, Narcisco Rosalez, and Richard Wooten conspired to possess cocaine with intent to distribute it and distribution of cocaine, in violation of 21 U.S.C. § 846. This count charged that the conspiracy began no later than the fall of 1986 and continued at least until the spring of 1988. The overt acts in furtherance of the conspiracy included the break-in of a home by Wooten and Rosalez and the sale of cocaine by Parkin and Rosalez. Count Two charged Parkin and Rosalez with distributing cocaine, and causing it to be distributed, on or about September 11, 1987, in violation of 21 U.S.C. § 841(a)(1). Parkin filed a motion in limine requesting the court to suppress any evidence concerning how Parkin had obtained the cocaine. The court denied the motion. The parties then proceeded to trial.

A confidential informant, Rocky Ghidina, assisted the government with its investigation of Parkin. Ghidina was equipped by police specialists with hidden electronic equipment—a recorder and a transmitter. On September 10, 1987, Ghidina went to the Ragon Motel in Creve Coeur, Illinois. At this meeting, which lasted about ten minutes, Ghidina asked Parkin to get some cocaine for him. Ghidina asked Parkin if one-quarter ounce of cocaine would cost $500 and Parkin responded that that was always the price. They agreed to meet at the Hole in the Wall Tavern between 11:00 and 12:00 the next morning. At 10:50 a.m. the next day Parkin came to Ghidina's apartment. Parkin said that he needed the money before he could go pick up the cocaine. Shortly after 11:00 that morning, Ghidina and Parkin drove a van to Bill and Mary's Tavern. Ghidina gave Parkin $500 and went into the tavern. Parkin left the van and went up the road. Parkin returned without any drugs. Parkin and Ghidina then waited in the parking lot in Ghidina's van. Narcisco Rosalez pulled up next to the van. Rosalez got into the van and handed Parkin one-quarter ounce of cocaine. Parkin then handed the cocaine to Ghidina. Ghidina and Parkin made arrangements for Parkin to get one-half gram of cocaine because Parkin made no money on the deal. The cocaine purchased in the transaction was introduced into evidence at trial.

Ghidina testified that he had previously bought drugs from Parkin sometime in 1987 prior to the transaction on September 11, and that prior to 1987 he went to Springfield with Parkin to cut twelve to fifteen ounces of cocaine into smaller quantities. Ghidina also testified about the subsequent marijuana transaction that was the subject of the other prosecution at issue in this appeal.

The government elicited testimony concerning the home invasion by Rosalez and

---

[*] Hon. Joseph T. Sneed, of the Ninth Circuit, is sitting by designation.

Wooten. Craig Anderson was a courier who shuttled drugs between Wooten and Rosalez. Anderson testified that Rosalez gave him a large quantity of cocaine and money to bring to Wooten's house. Anderson never arrived at Wooten's house. A day or two later Wooten and Rosalez broke into Anderson's house to retrieve the cocaine and money. The three fought, but Anderson eventually got away.

Parkin argues that the testimony from the government informant Ghidina concerning other drug transactions within the time period of the alleged conspiracy was unduly prejudicial under Federal Rule of Evidence 403. Parkin also claims that the testimony of Ghidina was not credible. Finally, he argues that the admission of evidence of the home invasion was not proper because this crime was not in furtherance of the conspiracy.

### B. *The Marijuana Case*

In case number 89–2302, the indictment charged Parkin with two counts. Count One alleged that Parkin conspired to possess marijuana with intent to distribute it and distribution of marijuana in violation of 21 U.S.C. § 846. Count Two charged Parkin with distributing marijuana on or about September 28, 1987, in violation of 21 U.S.C. § 841(a)(1). Parkin filed a motion in limine requesting the court to suppress any testimony or other evidence alleging any acts by Parkin relating to drugs other than those acts charged in the indictment. In support, Parkin argued such evidence was inadmissible under Federal Rules of Evidence 404(b) or 403. The court denied the motion. Subsequently, the count of the indictment which charged Parkin with conspiracy to distribute marijuana was dismissed on the government's motion.

With Parkin's express consent, a magistrate presided over the selection of the jury. Rocky Ghidina again assisted the government with its investigation of Parkin, and was again equipped with the hidden electronic equipment. Ghidina went to a tavern in Pekin, Illinois and spoke with Parkin for a short time. Informant Ghidina then asked Parkin how much Parkin would charge him for two ounces of marijuana. Parkin responded $160 and Ghidina agreed to purchase two ounces. Shortly thereafter, both men left the tavern and got into Parkin's van in the tavern parking lot. Informant Ghidina paid Parkin $160 for two ounces of marijuana. As part of the conversation during the transaction, Ghidina asked Parkin if he had any cocaine for sale. Parkin responded that he would have some within the next couple of days. When Ghidina was on the stand during the government's case-in-chief, this testimony was elicited:

Q: (AUSA EGGERS) Did you have any conversation about getting back together again?

A: (GHIDINA) Yes.

Q: What was the substance of that conversation?

MR. MILLER: (Parkin's Counsel) Objection, Your Honor. Irrelevant and prejudicial.

THE COURT: Overruled.

THE WITNESS: Cocaine.

MR. MILLER: Objection, Your Honor. Violates the 404(b).

THE COURT: Mr. Eggers (Government's Counsel), what was the last question?

MR. EGGERS: I was—the question was, what was the substance of the conversation.

THE COURT: Yes.... You may answer.

THE WITNESS: Cocaine.

MR. EGGERS: What—what was said by you, and what was said by him?

MR. MILLER: Objection, Your Honor. Irrelevant to this case.

THE COURT: Overruled.

THE WITNESS: I asked him if he had any cocaine. He said no at first, and then he said he might be getting an ounce in a day or two. I told him to get ahold of me when he got it.

Two tapes were made of the conversations between Parkin and informant Ghidina. One was made from the recording device which the informant wore, and one was made by the police from the trans-

mission of the conversation by the transmitter he was wearing. Both tapes and a transcript of each of them were introduced into evidence. The government played the tape that was made from the recording device to the jury and Parkin played the other tape to the jury. The content of both tapes was the same, but the quality of the recording was different. When the tapes were played before the jury, both Ghidina and a police officer identified Parkin's voice. In addition, the marijuana purchased in the transaction was introduced into evidence.

Parkin argues that the district court committed error by allowing the testimony concerning the cocaine inquiry into evidence. He also argues that it was reversible error for the magistrate to have selected the jury in a felony case.

## II. Argument

### A. *The Cocaine and Conspiracy Case*

■ Of the arguments raised by Parkin on appeal in the Cocaine and Conspiracy Case, only three merit discussion. Parkin's first alleged error contains two distinct arguments. The first part is a veiled argument that evidence elicited from the government informant Ghidina concerning other drug transactions within the time period of the alleged conspiracy was unduly prejudicial under Federal Rule of Evidence 403 and thus should have been excluded. The second part concerns the credibility of Ghidina. Finally, Parkin claims the home invasion was unrelated to the conspiracy; thus that testimony should not have been allowed.

■ Rule 403 permits the trial judge to exclude evidence if the probative value is substantially outweighed by the danger of unfair prejudice. We will not reverse a trial judge's decision concerning the admissibility of evidence absent an abuse of discretion. *United States v. Blanton,* 884 F.2d 973, 977 (7th Cir.1989). Parkin's attorney raised the defense of entrapment during his opening statement. The government introduced evidence of other drug transactions to rebut this defense. Although there was evidence of transactions

both before and after September 11, 1987, this court has rejected any rule that subsequent acts are *per se* inadmissible to show predisposition. *United States v. Moschiano,* 695 F.2d 236, 244 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983). The trial judge gave limiting instructions during trial that the evidence was introduced only for the purpose of showing intent, knowledge or predisposition. These transactions were close in time to the September 11, 1987 transaction and involved illegal drugs. They were between Parkin and the same government informant. The probative value outweighed any prejudicial effect this evidence may have had. At issue were short statements which were only briefly before the jury. They were relevant to the issue of predisposition. In sum, the trial judge did not abuse his discretion in allowing the statements into evidence.

■ The second argument concerns the credibility of the government informant, Ghidina. But as we have consistently held, credibility determinations are for the jury. *United States v. Fozo,* 904 F.2d 1166 (7th Cir.1990).

■ The final argument centers on the introduction of testimony regarding the home invasion. Parkin argues that the invasion was not in furtherance of the conspiracy. But the case which Parkin relies on in support of this argument does not involve a conspiracy. Parkin cites *United States v. Daniels,* 572 F.2d 535 (5th Cir. 1978), for the proposition that evidence that has no probative value and is inflammatory is inadmissible. This statement is true enough, but it does not aid us in determining whether the invasion was in furtherance of the conspiracy. Here, evidence of an overt act charged in the indictment was clearly probative. The question remains whether the act was in furtherance of the conspiracy.

Parkin is charged with conspiracy. The indictment charged that one of the overt acts in furtherance of the conspiracy was the home invasion by two of Parkin's co-conspirators. Anderson testified that he

acted as a courier of drugs and money between Rosalez and Wooten. This facilitated drug distribution by the conspiracy. Anderson's home was invaded for the purpose of retrieving the drugs and money that had been given to Anderson to shuttle to Wooten. The home invasion was in furtherance of the conspiracy to distribute cocaine.

■ The argument that Parkin did not take part in the home invasion is unavailing. Under the doctrine established in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), conspirators are responsible for acts committed by co-conspirators in furtherance of the conspiracy. *United States v. Troop*, 890 F.2d 1393 (7th Cir.1989). Therefore, the admission of testimony regarding the home invasion was proper.

### B. *The Marijuana Case*
#### 1. Admission of the Testimony Concerning Cocaine

■ In the marijuana case, Parkin challenges the decision of the district judge to admit certain testimony. Again, we give great deference to a district judge's decision to admit evidence and will reverse such a decision only for an abuse of discretion. *United States v. Blanton*, 884 F.2d 973, 977 (7th Cir.1989). Parkin argues that the testimony concerning the discussion of cocaine was "another bad act" and should have been excluded under Rule 404(b).[1] There is a four-part test used to evaluate whether "other acts" are admissible under Rule 404(b). *See United States v. Sullivan*, 911 F.2d 2, 6 (7th Cir.1990). However, before we analyze the testimony under the four-part test, we have to determine whether Rule 404(b) is applicable. In *United States v. Hawkins*, 823 F.2d 1020 (7th Cir. 1987), the defendant was charged with vari-

ous firearms violations. At trial, an agent testified regarding a conversation between herself and the defendant in which the defendant stated his desire to trade guns for cocaine so that the cocaine could be sold by his gang. On appeal, the defendant argued the evidence should not have been admitted under Rule 404(b). We concluded, "this statement was not a prior bad act [within] the meaning of Rule 404(b). Rather, because the statement was made during one of the drugs-for-guns transactions at issue, it was 'intricately related to the facts of the case.'" *Id.* at 1023 (quoting *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)). Similarly, the inquiry here about cocaine was part of the conversation during the transaction which was the basis for the charge in the indictment and was "intricately related" to the facts. Accordingly, the statement was not a prior bad act to be analyzed under Rule 404(b), but should be analyzed under Rule 403[2] to determine whether the prejudicial aspects of the statement substantially outweigh its probative value. *Hawkins*, 823 F.2d at 1023. The statement concerning the cocaine was very brief and was not inflammatory. On the other hand, it was probative of Parkin's knowledge and intent at the time of the transaction. We hold that the district judge did not abuse his discretion by allowing the testimony into evidence.

■ Furthermore, we note that Parkin did not object to the jury listening to the tapes. Indeed, Parkin had the jury listen to one of the tapes as part of his defense. The tapes contained the statement to which informant Ghidina testified—the inquiry about cocaine. In addition, the other evidence against Parkin was overwhelming, including the tapes, the identification of Parkin on the tapes, and the testimony of

---

1. Rule 404(b) reads:
   **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. Rule 403 reads:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

informant Ghidina. Thus, even if there was error with regard to the statement about cocaine, it clearly would have been harmless. *United States v. Manganellis*, 864 F.2d 528, 539 (7th Cir.1988).

### 2. Selection of the Jury by a Magistrate

■ Parkin contends that his conviction should be reversed because a magistrate presided over jury selection in his case. He argues this result is mandated by the Supreme Court's decision in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). In *Gomez*, the Court held that the Federal Magistrates Act does not permit district courts to delegate jury selection to federal magistrates and that such a delegation is not harmless error where the defendant has objected thereto. Here, however, Parkin's counsel expressly consented to the magistrate's role in jury selection. As we stated in *United States v. Lake*, 910 F.2d 414, 417 (7th Cir.1990), "where the defendant consents to [the magistrate's] participation, a federal magistrate may conduct the selection of a jury in a felony case."

### III. Conclusion

For all of these reasons, the convictions entered by the district court below in the two cases are AFFIRMED.