UNITED STATES of America, Plaintiff–Appellee,

v.

Mark GIBSON, Defendant–Appellant.

No. 98–1503.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1998.

Decided March 4, 1999.

Brian R. Harvey (argued), Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Plaintiff–Appellee.

Victor M. Pilolla (argued), Oak Park, IL, for Defendant–Appellant.

Before CUDAHY, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Mark Gibson was convicted by a jury of four counts of distributing and possessing with the intent to distribute cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1). On appeal, Gibson raises two issues: (1) whether the district court erred in admitting into evidence statements Gibson made to the FBI upon his arrest in which Gibson admitted that he had sold drugs, including crack cocaine, for years and (2) whether the district court erred in admitting into evidence portions of recorded conversations between Gibson and an undercover agent during which they discussed the possible purchase of handguns. For the reasons discussed below, we reject the arguments presented by Gibson and affirm his conviction.

## I. HISTORY

On four separate occasions in February and April 1996, Gibson sold crack cocaine to Mark Banks. Unbeknownst to Gibson, Banks was a Senior Special Agent with the Wisconsin Department of Justice working undercover in a joint operation with the FBI, the Waukegan and Zion Police Departments, and the Kenosha County drug unit.

After establishing a rapport with Gibson by engaging in two prior narcotics transactions with him, Agent Banks arranged for a third meeting with Gibson in order to purchase another quantity of crack cocaine. During the course of this transaction, which was recorded with surveillance devices, Agent Banks inquired about the possibility of purchasing a handgun from Gibson. Gibson told Agent Banks that he could obtain nine millimeter pistols and forty-five caliber handguns and would sell these firearms to Agent Banks for $200 each. Although no sale of handguns was finalized, Agent Banks ended their meeting by purchasing crack cocaine from Gibson and confirming his interest in future drug and handgun purchases.

The fourth and final transaction occurred approximately two weeks later. Once again, Agent Banks contacted Gibson and indicated his interest in purchasing additional quantities of crack cocaine. After confirming the amount of crack cocaine to be exchanged, Agent Banks inquired about the purchase of a nine millimeter pistol. No agreement was

reached regarding the purchase of a handgun in this conversation.

Agent Banks and Gibson met later that day to complete the transaction upon which they had previously agreed. This transaction was also recorded by surveillance devices. Agent Banks again inquired about the purchase of a handgun, but Gibson remained noncommittal on such an exchange, and, in fact, Agent Banks never purchased a handgun from Gibson.

Gibson was eventually arrested by the FBI for distribution and possession with intent to distribute crack cocaine fifteen months after the date of his last transaction with Agent Banks. The delay in Gibson's arrest was necessitated by Agent Banks' involvement in a number of other criminal investigations. After his arrest, the FBI approached Gibson about the possibility of cooperating in an ongoing FBI drug investigation. Gibson consented to an interview with FBI agents. During the course of that interview, Gibson admitted that he had been involved in the trafficking of narcotics, starting with marijuana and cocaine, since he was fourteen or fifteen years old, that he began selling crack cocaine in 1994, and that he had last purchased crack cocaine for resale in January 1997. Despite participating in this interview, Gibson decided not to cooperate with the FBI, and the criminal case against him went forward.

Prior to his trial on the drug charges, Gibson filed a motion in limine seeking to preclude the government from introducing certain evidence at trial. The motion contested the admission of the statements Gibson made to the FBI detailing his drug dealing activities into evidence. Gibson submitted that these statements were irrelevant because they did not relate to the specific charges contained in his indictment. The motion also sought to prevent the government from offering those portions of the recorded conversations between Gibson and Agent Banks pertaining to the purchase of

handguns. Gibson again argued that these recordings were irrelevant and also asserted that they were prejudicial. The district court denied this motion, and the government offered this evidence at trial.

## II. ANALYSIS

### A. Admissibility of Gibson's Prior Incriminating Statements to the FBI

Gibson argues that the district court erred in allowing the government to admit into evidence the incriminating statements Gibson made to the FBI concerning his prior drug dealing activities. Gibson moved, prior to trial, to bar the government from introducing this evidence pursuant to Federal Rule of Evidence 402. Gibson argued that the statements had no relevance to the drug charges in this case. The district court denied Gibson's motion, ruling that "Gibson's admissions [were] directly relevant and probative of his guilt, even though he did not confess to the specific undercover sales in this case."

On appeal, it appears that Gibson has abandoned his relevancy objection to this evidence and, instead, maintains that the statements were inadmissible evidence of "other crimes" within the meaning of Rule 404(b).[1] Rule 404(b) generally prohibits the introduction of character evidence relating to a defendant's other crimes, wrongs, or acts when such evidence is offered to show conduct in conformity with the activity that is the subject of current litigation. *United States v. Macias*, 930 F.2d 567, 572 (7th Cir.1991). Gibson submits that the statements were offered only to show his propensity to commit the charged crimes and, therefore, the admission of this evidence violated Rule 404(b).

■ Our review of the record indicates that Gibson failed to raise a Rule 404(b) objection to the admission of this evidence before the district court. This failure to

---

1. Federal Rule of Evidence 404(b) provides in relevant part:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

 may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Fed.R.Evid. 404(b).

make a timely objection before the district court constitutes a forfeiture of this argument on appeal. Fed.R.Crim.P. 52(b);[2] *United States v. Wilson*, 134 F.3d 855, 862 (7th Cir.1998). We therefore review the district court's decision to admit this evidence for plain error only. *United States v. Olano*, 507 U.S. 725, 731–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Wilson*, 134 F.3d at 862–63; *United States v. Ross*, 77 F.3d 1525, 1538 (7th Cir.1996).

■ Plain error review under Rule 52(b) allows us to reverse the district court only if we conclude that: (1) error occurred; (2) the error was plain; and (3) the error affected the defendant's substantial rights. *See Olano*, 507 U.S. at 731–35, 113 S.Ct. 1770; *Wilson*, 134 F.3d at 862–63; *Ross*, 77 F.3d at 1538. An "error" within the meaning of Rule 52(b) occurs if a legal rule has been violated during the district court proceedings, and the defendant did not knowingly waive his right to object to the violation. *Olano*, 507 U.S. at 732–34, 113 S.Ct. 1770. "Plain" means "clear" or "obvious." *Id.* at 734, 113 S.Ct. 1770 ("At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law."). Finally, plain error affects "substantial rights" if the error was prejudicial, meaning that the error "must have affected the outcome of the district court proceedings." *Id.* The defendant, not the government, bears the burden of persuasion with respect to prejudice. *Id.* Moreover, even if all three conditions are satisfied, the decision to correct a forfeited error lies within the sound discretion of the court of appeals, and "the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732, 113 S.Ct. 1770 (citations and internal quotations omitted).

■ Our first task is to determine whether the admission of the statements constituted error under Rule 404(b). We conclude no such error occurred. As stated, evidence of other crimes or wrongs is not admissible under Rule 404(b) to show that the defendant acted in conformity therewith on a particular occasion. Fed.R.Evid. 404(b). Rule 404(b) contains a proviso, however, that permits evidence of other crimes, wrongs, or acts to be introduced for other non-propensity purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." *Id.*

■ This Court has established a four-prong test to determine the appropriateness of admitting evidence under Rule 404(b). Under this test, evidence may be admitted pursuant to Rule 404(b) if: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *See, e.g., United States v. Lampkins*, 47 F.3d 175, 179 (7th Cir.1995); *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir.1994).

Gibson challenges the district court's decision to admit this evidence on three of the four prongs; he concedes that his admission of prior drug dealing is sufficient to support a jury finding that he committed those acts. With respect to the first prong of the test, Gibson argues that the admission of the statements he made to the FBI can serve no purpose other than to show his propensity to deal drugs. The government counters that the FBI statements were directed toward establishing a matter in issue other than Gibson's propensity—the statements were relevant to the issue of identity. We agree with the government's assessment of the evidence. *See* Fed.R.Evid. 404(b); *United States v. Bursey*, 85 F.3d 293, 297 (7th Cir. 1996) (reasoning that "prior bad acts" are

---

**2.** Federal Rule of Criminal Procedure 52(b) provides a court of appeals with limited power to correct errors that were forfeited because they were not timely raised before the district court. *See United States v. Olano*, 507 U.S. 725, 730, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b).

admissible under Rule 404(b) to show identity). Gibson's identity was the material issue in this case because his primary defense at trial was that of mistaken identity. Gibson took the position at trial that the individual with whom Agent Banks dealt·was not Gibson, but rather his brother. Thus, Gibson's statements to the FBI, in which he admitted that he began selling crack cocaine in 1994 and that he had last purchased crack for resale as late as January of 1997, were certainly relevant to prove identity under Rule 404(b). This evidence helped establish that Agent Banks dealt with Gibson, not his brother, in the charged 1996 drug transactions even though Gibson did not confess to the specific undercover sales in this case. *See United States v. Thomas,* 74 F.3d 676, 678 (6th Cir.1996) (concluding that a co-defendant's testimony about the defendant's involvement in prior uncharged drug transactions was relevant to prove identity under Rule 404(b) when the defendant's primary defense at trial was that he was not the person who sold drugs to the undercover police officer).

■ With respect to the second prong, we conclude that Gibson's admitted prior drug activities were substantially similar to the charged crimes and were close enough in time to be relevant to the charges in this case. Gibson was charged with the illegal distribution and possession with the intent to distribute crack cocaine. In his statements to the FBI, Gibson admitted to having sold crack cocaine. Clearly, the activities Gibson admitted to having engaged in were "similar enough" to the charged crimes to be relevant to the charges in this case. *See Hubbard,* 22 F.3d at 1418 (concluding that "other act" evidence was similar enough to charged crime when the charged crime was conspiring to manufacture and possess with intent to distribute PCP and the "other act" evidence related to a prior sale of PCP); *see also United States v. Hernandez,* 84 F.3d 931, 935 (7th Cir.1996) (concluding that prior marijuana conviction was "similar enough" for Rule 404(b) purposes to charged crimes of distributing cocaine and heroin, even though different drugs were involved, because both incidents concerned distribution amounts of drugs and illicit transport).

We also conclude that the temporal proximity between the "other acts" and the charged crimes in this case ·is sufficiently close for Rule 404(b) purposes. Gibson, who was twenty-two at the time of the FBI interview, admitted that he had been trafficking in narcotics since he was approximately fourteen or fifteen years old, that he began selling crack cocaine in 1994, and that he last purchased crack cocaine for resale in January of 1997. This evidence does not refer to an isolated drug sale committed years ago, but rather suggests a continuous enterprise of drug dealing engaged in by Gibson over a seven or eight year period. When viewed in this light, the evidence of his drug dealing is sufficiently close in time to the charged conduct for purposes of Rule 404(b). *See, e.g., United States v. Mounts,* 35 F.3d 1208, 1214–15 (7th Cir.1994) (concluding that seven years between acts ·is a sufficiently close nexus); *United States v. Kreiser,* 15 F.3d 635, 640–41 (7th Cir.1994) (same).

■ Finally, under the fourth prong, we conclude that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Although the statements may have been somewhat prejudicial, the probative value of the FBI statements was obviously quite high when. considered in light of Gibson's mistaken identity defense at trial. *See United States v. Paredes,* 87 F.3d 921, 924–25 (7th Cir.1996) (concluding that two prior convictions for the same offense, proffered to show, in part, the defendant's identity under Rule 404(b), was not substantially outweighed by the potential risk of unfair prejudice because the similarity of the prior offenses to the charged offense actually increased the probity of that evidence and decreased the potential risk of unfair prejudice).

■ Even if we were to find that the admission of these statements constituted plain error, we would still conclude that the admission of this evidence did not affect Gibson's "substantial rights"—the third condition under the plain error doctrine. Gibson has not made the requisite showing that the admission of this evidence "affected the outcome of the district court proceedings." *Ola-*

*no,* 507 U.S. at 734, 113 S.Ct. 1770. Even without the admission of these statements, there was more than enough evidence offered by the government at trial to convict Gibson. In each of the undercover transactions forming the basis for the charges in this case, Agent Banks met face-to-face with Gibson, and Agent Banks testified to that effect at Gibson's trial. Moreover, each of these transactions was under either audio or video surveillance (or both), and these recordings were admitted into evidence at Gibson's trial. Thus, the jury had the opportunity to review the surveillance videos and photographs and make their own determinations whether that evidence depicted Gibson or his brother. Furthermore, two of the transactions were under additional surveillance by the FBI, and an FBI agent testified at trial that Gibson was the person transacting with Agent Banks on those occasions. Based on the overwhelming evidence arrayed against Gibson, we are confident that any possible error in the admission of Gibson's statements did not affect the outcome of the proceedings below.

In sum, Gibson has failed to satisfy the three conditions necessary to demonstrate that the district court committed plain error in admitting Gibson's statements to the FBI under Rule 404(b)—namely, that the district court committed error, that the error was plain, and that the error affected his substantial rights. Accordingly, we conclude that the district court's admission of this evidence did not constitute plain error.

### B. *Admissibility of the Portions of the Recorded Conversations Involving the Possible Purchase of Guns*

Gibson also challenges the district court's decision to admit into evidence those portions of the recorded conversations between Agent Banks and Gibson pertaining to the possible sale of handguns. This evidence included testimony from Agent Banks, audio and video recordings of the discussions that took place between Agent Banks and Gibson, and written transcripts of those same discussions.

Gibson moved, prior to trial, to bar the government from introducing this evidence pursuant to Federal Rules of Evidence 402 and 403. Gibson argued that the evidence was irrelevant and prejudicial. The district court denied Gibson's motion, concluding that the transcripts revealed the references to guns were "intricately related and inextricably intertwined to conversations concerning the undercover drug sales at issue" in this case and that "[i]n context, these references [were] not unfairly prejudicial but rather [were] probative of Gibson's knowing participation in a criminal venture."

We review a district court's evidentiary rulings only for an abuse of discretion. *United States v. Ramirez,* 45 F.3d 1096, 1101 (7th Cir.1995). An "[a]buse of discretion only occurs when no reasonable person could take the view of the trial court." *United States v. Hilgeford,* 7 F.3d 1340, 1345 (7th Cir.1993).

"[T]his circuit has a well-established line of precedent which allows evidence of uncharged acts to be introduced if the evidence is 'intricately related' to the acts charged in the indictment." *United States v. Spaeni,* 60 F.3d 313, 316 (7th Cir.1995); *see also United States v. King,* 126 F.3d 987, 995 (7th Cir.1997) ("[A] court may admit evidence of other criminal conduct that is inextricably intertwined with a charged offense or that completes the story of the charged offense."). Under the "intricately related" doctrine, evidence of uncharged criminal activity that is found to be "intricately related to the facts of the case" is deemed relevant and admissible, provided that it satisfies the balancing test of Rule 403.[3] *See Ramirez,* 45 F.3d at 1102–03; *United States v. Hargrove,* 929 F.2d 316, 320 (7th Cir.1991).

On appeal, Gibson argues that the district court abused its discretion in concluding that the evidence regarding the potential purchase of a handgun was admissible under the "intricately related" doctrine. Gibson contends that this case is not one in which

---

**3.** Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

the discussions regarding the purchase of handguns were "inextricably intertwined" with the charged offenses because Gibson's sales of crack cocaine to Agent Banks would have occurred regardless of the outcome of their gun negotiations. Gibson argues that the gun evidence did not contribute in any manner to a better understanding of the drug transactions in question; nor was the evidence necessary to explain the circumstances surrounding the charged drug offenses. Since there was no "rational connection" between the gun evidence and the charged offenses, Gibson submits that the gun evidence was irrelevant and, therefore, constituted "other acts" evidence that is inadmissable under Rule 404(b).[4]

■ We find Gibson's arguments unpersuasive. Under the "intricately related" doctrine, the admissibility of uncharged criminal activity turns on:

> whether the evidence is properly admitted to provide the jury with a "complete story of the crime [on] trial, ... whether its absence would create a "chronological or conceptual void" in the story of the crime, ... or whether it is "so blended or connected" that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime.

*Ramirez*, 45 F.3d at 1102 (citations omitted); *see Spaeni*, 60 F.3d at 316. We conclude there were at least two bases for admitting the gun evidence in this case, either of which provides a sufficient ground to justify the district court's ruling.

■ First, the gun evidence was properly considered to be "intricately related" to the facts of this case because the discussions about the sale of guns occurred contemporaneously with Gibson's sales of crack cocaine to Agent Banks. Uncharged criminal activity is admissible under the "intricately related" doctrine if it arises from the same transaction or transactions as the charged crimes. *See United States v. Parkin*, 917 F.2d 313, 317 (7th Cir.1990); *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir.1987), *overruled on other grounds by United States v. Baldwin*, 60 F.3d 363 (7th Cir.1995). In *Parkin*, the defendant was charged with distributing marijuana. 917 F.2d at 315. At trial, a confidential informant testified regarding a conversation between himself and the defendant in which the defendant indicated that he would have cocaine for sale within a couple of days. *Id.* On appeal, the defendant argued that the district court abused its discretion in admitting evidence relating to the possible sale of cocaine in a prosecution for marijuana distribution because this evidence should have been excluded as a bad act under Rule 404(b). *Id.* at 317. We determined that the statement relating to the possible sale of cocaine was not a prior bad act to be analyzed under Rule 404(b). *Id.* Rather, we concluded that the statement was "intricately related" to the facts of that case and properly admitted into evidence, because "the inquiry ... about cocaine was part of the conversation during the transaction which was the basis for the charge in the indictment." *Id.* at 317. Similarly, in the present case, we believe the district court did not abuse its discretion in concluding that the gun evidence was "intricately related" to the facts of this case because Gibson and Agent Banks were negotiating the sale of crack cocaine and guns *at the same time in the same conversations. See also Hawkins*, 823

---

4. We note that our review of the record in this case indicates that Gibson failed to raise a Rule 404(b) objection to the gun evidence before the district court. As we previously stated, when a defendant fails to raise a Rule 404(b) objection to the admission of evidence before the district court, the objection is deemed to have been forfeited on appeal unless the admission was plain error. *See Ross*, 77 F.3d at 1538.

Regardless of whether Gibson forfeited his Rule 404(b) objection, the challenged evidence does not qualify as "other crimes" evidence within the meaning of Rule 404(b). Because we conclude *infra* that the gun evidence was "intri- cately related" to the charged crimes, the gun evidence was admissible without regard to the limitations imposed by Rule 404(b). *See United States v. Lahey*, 55 F.3d 1289, 1295–96 (7th Cir. 1995) (concluding that evidence of uncharged criminal activity is not subject to a Rule 404(b) analysis if such evidence is inextricably intertwined with the evidence surrounding the charged offense); *Ramirez,* 45 F.3d at 1102 ("[E]vidence of uncharged criminal *activity* is admissible, *even if it does not satisfy the requirements of Fed.R.Evid. 404(b)*, if that evidence is 'intricately related to the facts of the case' before the court." (citations omitted)).

F.2d at 1023 (concluding that an agent's testimony that the defendant, who was charged with various firearm violations, suggested a possible exchange of guns for cocaine was admissible under the "intricately related" doctrine because the cocaine statements were made during one of the guns transactions at issue in the case).

 Second, despite Gibson's arguments to the contrary, we conclude the gun evidence was necessary to provide the jury with the "complete story" of Gibson's crimes. Agent Banks and Gibson discussed the possibility of purchasing a combination of drugs and guns on several occasions. When evidence is offered "to complete the story" of the crime or crimes charged, it is admissible under the "intricately related" doctrine. See Ramirez, 45 F.3d at 1102. A careful review of the record illustrates that the gun discussions were so intertwined with the drug negotiations that admission of the portions of the taped conversations pertaining to gun sales was necessary to enable the jury to fully understand and make sense of the underlying negotiations for the sale of crack cocaine.

For example, in the last transaction between Gibson and Agent Banks, the evidence detailing the potential purchase of a handgun was necessary to enable the jury to understand why Agent Banks agreed to purchase twenty-five grams of crack cocaine even though Agent Banks initially contacted Gibson and expressed his desire to purchase a quantity substantially less than that amount—approximately a half ounce. During the course of their transaction, Agent Banks informed Gibson that he had a sufficient amount of money to purchase a half ounce of crack cocaine and one or two handguns. When Gibson learned of the amount of money Agent Banks had in his possession, he suggested that Agent Banks could purchase a larger amount of crack cocaine instead of the handguns as Agent Banks had proposed. Agent Banks agreed with this suggestion and completed the transaction for the larger amount of crack cocaine in lieu of a combination of drugs and handguns.

It is apparent that this evidence was necessary to fully explain the transactions between Gibson and Agent Banks. In other words, the gun evidence "gave the jury a more, not less, accurate picture of the circumstances" surrounding the charged crimes. See Ramirez, 45 F.3d at 1103.

For these reasons, the evidence concerning the possible purchase of handguns was properly considered by the district court to be "intricately related to the facts" that gave rise to Gibson's indictment. Because evidence that is "intricately related" to the facts of a given case is admissible so long as it satisfies Rule 403, we need only decide whether the prejudicial aspects of the gun evidence substantially outweigh its probative value. See Ramirez, 45 F.3d at 1102–03; Hawkins, 823 F.2d at 1023.

 As stated, the district court concluded that the gun evidence was not unfairly prejudicial in the context of this case, but rather was probative of Gibson's participation in the drug transactions. On appeal, Gibson asserts that the introduction of the gun evidence during a trial for crack cocaine distribution was highly prejudicial. Gibson maintains that the gun evidence had no probative value because he was never charged with any firearm offenses, and, therefore, the prejudicial impact of this evidence must necessarily outweigh its probative value. We agree with the district court that the probative value of the gun evidence was not substantially outweighed by any risk of unfair prejudice to Gibson.

 "As a reviewing court we accord the trial court's assessment of the relative probative value and unfair prejudice great deference." Lampkins, 47 F.3d at 180. The probative value of this evidence is clear. As mentioned above, the gun evidence was necessary to provide the jury a context in which to understand the negotiations between Gibson and Agent Banks. Moreover, while the gun evidence may well have been prejudicial to some extent, it was not unduly prejudicial. "[O]ur decisions have emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded." United States v. Pulido, 69 F.3d 192, 201 (7th Cir.1995). Evidence is considered unfairly prejudicial "only

if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Id.* (citation and internal quotations omitted). At trial, the government informed the jury that Agent Banks never actually purchased a gun from Gibson, thereby minimizing any chance that the jury would convict Gibson for dealing in guns as opposed to crack cocaine. Thus, we conclude that the district court was well within its discretion in determining that the probative value of the gun evidence was not substantially outweighed by any risk of unfair prejudice under Rule 403.

In sum, we conclude that Gibson's challenge to the admissibility of the gun evidence under the "intricately related" doctrine is without merit. The gun evidence was part and parcel of the charged drug transactions and was necessary to provide the jury with a "complete story" of Gibson's crimes. Accordingly, we hold that the district court did not abuse its discretion in admitting this evidence.

### III. Conclusion

For the foregoing reasons, we reject Gibson's appeal and his conviction is Affirmed.