In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1446

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HOWARD BAKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09 CR 20055—**Michael P. McCuskey**, *Chief Judge.*

ARGUED APRIL 1, 2011—DECIDED AUGUST 23, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS[*], *Circuit Judges*.

BAUER, *Circuit Judge*.  A jury convicted defendant-ap-
pellant Howard Baker of possession with intent to distrib-
ute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

---

[*] Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

and (b)(1)(B), and he was sentenced to 360 months' imprisonment. Baker challenges the district court's admission of evidence under Federal Rule of Evidence 404(b), the sufficiency of the evidence used to prove possession, and his sentence. For the following reasons, we affirm Baker's conviction and sentence.

## I. BACKGROUND

On the night of July 24, 2009, Champaign Police Department Officers Chris Aikman and Heidi Van Antwerp were in the area of a reported battery when they spotted Baker, who matched the description of the battery suspect. The uniformed officers parked their marked squad cars and walked into the front yard of 210 East Hill Street, where Baker was talking on a cell phone and eating a plate of food. Officer Aikman asked Baker to come talk to him, and Baker walked over to the officers and voluntarily handed over his identification. Officer Aikman then told Baker that he was going to pat him down and reached for his arm, at which point Baker began running westbound on the sidewalk. Officers Aikman and Van Antwerp chased Baker, with Officer Aikman just a few feet behind Baker and within sight the entire time. Officer Aikman caught up to Baker on the west side of 204 East Hill Street and tackled him onto a fence that runs between 204 East Hill Street and 202 East Hill Street, causing the fence to collapse. Baker regained his footing after being tackled and began running east along Hill Street, following the same path as the initial chase. Baker ran back to

210 East Hill Street and started to enter the house when Officer Aikman tackled Baker a second time, this time bringing him down and handcuffing him.

After walking Baker to the squad car, Officer Aikman went back along the chase route to the portion of fence that had collapsed during the struggle and saw two baggies on the ground. The baggies contained 21.9 and 4.4 grams of crack cocaine, later stipulated to be 25.2 grams of crack cocaine. Baker denied that the baggies were his and his fingerprints were not found on them. Baker was charged with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

## A. Testimony at Trial

At trial, the government introduced testimony from the arresting officers, an expert witness, and Baker's occasional girlfriend, Trena Keomala, who testified under a grant of immunity. Keomala's testimony can be classified into two categories, one of which is at issue in this appeal and one of which is not. First, Keomala testified that she spoke to Baker on the night of the offense before his arrest and that Baker informed her that he was on the "Hill" (210 East Hill Street) because that was where he "made his money." When Keomala asked whether Baker had any crack cocaine for her to sell, Baker responded that he had only enough crack cocaine for himself. Keomala also testified that the day following Baker's arrest, Baker related the previous evening's events, telling her that right before his arrest he

had been standing outside 210 East Hill, "posted up"; Keomala explained that "posted up" is slang for waiting to exchange drugs for money. That part of Keomala's testimony is not at issue on appeal.

Second, Keomala testified that since late 2006, she has routinely received crack cocaine from Baker, which she would sell and Baker would receive the proceeds, and that she had received crack cocaine from Baker to sell just days before Baker's arrest. This testimony is at issue on appeal and is disputed.

### B. Rule 404(b) Evidence

Before trial, the government filed a notice of intent to call an informant who would testify that Baker had distributed crack cocaine to him for resale on prior occasions. The government did not include Keomala's disputed testimony in this notice, even though she too would testify that Baker distributed crack cocaine to her for resale. In response to the notice of intent, defense counsel filed a motion to bar all Rule 404(b) evidence. The judge denied this motion. Subsequently, when Keomala was called as a witness at trial, the judge mistakenly believed that Keomala had been included in the Rule 404(b) notice of intent and related defense motion, which had been denied, and he therefore permitted her to testify for the limited purpose of proving Baker's intent and knowledge under Rule 404(b). Defense counsel did not object. The district court then twice gave the jury a limiting instruction on the proper use of the evidence for the limited purpose of intent and knowledge.

### C.  The Verdict and Sentencing

The jury found Baker guilty of possession with intent to distribute crack cocaine. The district court applied a career offender designation to Baker based on two prior felony convictions for unlawful delivery of a controlled substance. After examining Baker's criminal history and considering the § 3553 sentencing factors, the district court sentenced Baker at the bottom of the Guidelines range to 360 months' imprisonment.

## II.  DISCUSSION

### A.  Rule 404(b) Evidence

When the government introduced evidence of Baker's prior drug distributions to Keomala to prove intent and knowledge, Baker objected on the grounds of lack of foundation. On appeal, Baker raises an objection for the first time under Federal Rule of Evidence 404(b). We review the issue for plain error. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *see* Fed. R. Crim. P. 52(b). Under this standard of review, we determine whether there was (1) an error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Johnson*, 520 U.S. at 467. An error occurs if a legal rule has been violated during the district court proceedings. *United States v. Gibson*, 170 F.3d 673, 678 (7th Cir. 1999). Plain error affects the substantial rights of the defendant if the error was prejudicial, meaning that the error "affected the outcome

of the district court proceedings." *Id.* at 678 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The defendant bears the burden of persuasion with respect to showing prejudice. *Id.* The decision to correct an error lies within the sound discretion of this court, and we do not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *Id*.

We first determine whether the admission of Keomala's testimony about Baker's prior bad acts constituted error under Rule 404(b). We conclude no such error occurred.

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 then states that all relevant evidence is generally admissible unless there is a reason for its exclusion. Fed. R. Evid. 402.

The relevance of Keomala's testimony is apparent. Following his arrest, Baker denied that he knowingly possessed the baggies of crack cocaine on the night he was arrested and also denied that he possessed the crack cocaine with intent to deliver it. Testimony regarding other instances in which Baker possessed crack cocaine with the intent to deliver it is relevant to Baker's intent and knowledge. *See United States v. Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009) ("In drug cases, we have often found a defendant's other drug transactions relevant for purposes other than propensity, such as

knowledge, intent, and lack of mistake."); *United States v. Curry*, 79 F.3d 1489, 1495-96 (7th Cir. 1996) (finding that in a case where the defendant denied possessing a baggie containing crack cocaine that was dropped into a bush, evidence from witnesses who had previously purchased crack cocaine from the defendant was relevant and properly admitted); *United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (finding that evidence of prior drug transactions showed that the defendant "was familiar with the cocaine business and was not some innocent bystander 'mistakenly caught up in an overzealous law enforcement'").

Rule 404(b) is a rule of exclusion. It states that evidence of a defendant's prior bad acts is not admissible if entered simply to show the defendant's propensity to commit the crime with which he is charged. Fed. R. Evid. 404(b). The evidence may, however, be admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We employ a four-part test to determine whether evidence of prior conduct is admissible under Rule 404(b), taking into consideration the following factors: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984).

Rule 403 is also an exclusionary rule; it provides for the exclusion of relevant evidence that is unfairly prejudicial to the defendant. Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009) (citing *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008)).

Baker argues that the trial court never considered the *Shackleford* four-part test or performed a balancing test for prejudice before allowing Keomala to testify. While Baker faults the district court for failing to orally recite its Rule 403 and Rule 404(b) findings, a district court is not under an obligation to make every evidentiary ruling orally; had Baker wanted an oral ruling, he should have objected on Rule 403 and Rule 404(b) grounds. Given this lack of action, it is easy to see why the district court did not undertake the oral analysis of Keomala's testimony that Baker now desires.

Nevertheless, we do believe that this evidence satisfies the four-part test, though Baker specifically takes issue with the second and fourth factors. With regard to the second factor, Baker contends that because there was "no evidence" of the type of drug sales he was engaged in at the time of his arrest, there is no way of knowing whether his tender of drugs to Keomala was similar enough to the activity for which he was arrested and found guilty. This argument is wholly without merit. Keomala testified that Baker supplied her with crack cocaine. Here, Baker was charged with possession

with intent to distribute crack cocaine. These acts are substantially similar.

As to the fourth factor, we conclude that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. It is well-established that when a defendant is charged with a specific intent crime, prior bad acts may be admitted if the act demonstrates how the defendant's behavior was purposeful. *E.g., Curry*, 79 F.3d at 1495. Because Baker denies intent, this evidence is highly probative on that element. Although evidence of prior drug dealings may be prejudicial to Baker, it is not unfairly prejudicial. Moreover, where evidence is of probative value, as it is here, the danger of unfair prejudice was effectively handled through the use of a proper limiting instruction, which the district court twice provided to the jury. *See United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005).

Moreover, the admission of this evidence did not affect Baker's substantial rights—the third condition under the plain error standard. Even without the admission of the disputed testimony about Baker's prior drug dealings, the government offered a considerable amount of other evidence to convict Baker, such as the arresting officers' testimony, Keomala's direct evidence testimony, and the expert testimony. *See infra* Part C. Baker has therefore failed to satisfy the three conditions necessary to demonstrate plain error, and we conclude that the admission of Keomala's testimony passes muster.

**B.  Reasonableness of the Sentence**

Baker next argues that the sentencing court failed to properly consider and apply all of the sentencing factors and that his 360-month sentence is unreasonably long. We disagree.

Whether the district court followed proper procedures in imposing a sentence as prescribed in *United States v. Booker*, 543 U.S. 220 (2005), is a question of law we review de novo. *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). The Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), described the procedure that a sentencing court is required to follow. First, the sentencing court must correctly calculate the applicable Guidelines range. *Gall*, 552 U.S. at 39. Then, after giving both parties an opportunity to argue for the sentence they deem appropriate, the sentencing judge should consider all the § 3553(a) factors.[1] *Id.* at 49. After deciding on the appropriate sentence, the sentencing court must adequately explain the chosen sentence. *Id.* at 50. "The district court need not address each § 3553(a) factor in checklist fashion, explicitly articulating its conclusion

---

[1] Section 3553(a) states that a sentencing court must impose a minimally sufficient sentence that: (1) considers the nature and circumstances of the present offense and the defendant's history; (2) reflects the seriousness of the offense; (3) promotes respect for the law; (4) provides just punishment for the offense; (5) affords adequate deterrence to criminal conduct; (6) protects the public from further crimes by the defendant; and (7) provides the defendant with needed treatment, training, or care. 18 U.S.C. § 3553(a).

for each factor; rather, the court must simply give an adequate statement of reasons, consistent with § 3553(a), for believing the sentence it selects is appropriate." *United States v. Panaigua-Verdugo*, 537 F.3d 722, 728 (7th Cir. 2008).

Once we are satisfied that the district court committed no procedural error, we review the substantive reasonableness of the sentence under the abuse of discretion standard. *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010). A within-Guidelines sentence is entitled to a presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 347 (2007).

Baker argues that the district court did not expressly discuss the seriousness of his present offense, and to the degree that the judge did so, the judge improperly considered the seriousness in light of Baker's prior convictions. Ultimately, this argument amounts to Baker's dissatisfaction with his increased sentence because of his career offender enhancement, which was properly applied and not challenged during the sentencing hearing or on appeal. Section 3553(a) and the career offender guidelines encourage judges to consider "the nature and circumstances of the offense *and the history and characteristics of the defendant*." 18 U.S.C. § 3553(a)(1) (emphasis added). The district court's fairly lengthy discussion of Baker's previous convictions—all similar drug convictions—was not error. In sentencing Baker at the bottom of the advisory Guideline range, the district court sufficiently analyzed the § 3553(a) factors and explained its reasoning behind the sentence, including a consideration of the seriousness of Baker's offense.

While the district court may not have expressly addressed each § 3553(a) factor, it was not required to do so.

Baker has not presented an argument that overcomes the rebuttable presumption of reasonableness of his within-Guidelines sentence. While Baker expresses that "it is hard to conceive of a more outrageous and direct assault on the most basic concepts of justice" regarding his thirty-year prison sentence, we believe that this sentence is reasonable given that the defendant has made a lifelong career out of drug dealing. The district court did not abuse its discretion in sentencing Baker to a within-Guidelines sentence.

### C. Sufficiency of Evidence

Baker finally argues that the government produced no evidence to prove the possession charge. We give a jury verdict great deference and will uphold the verdict if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hicks*, 368 F.3d 801, 804-05 (7th Cir. 2004). We will not re-weigh the evidence or second guess the jury's credibility determinations. *United States v. Stevens*, 453 F.3d 963, 965 (7th Cir. 2006).

Baker argues that because there was no testimony from any person who actually saw him with the baggies of drugs, no rational trier of fact could have found beyond a reasonable doubt that the baggies were ever in Baker's

possession. He also points out that his fingerprints were never found on the baggies.

Viewing the evidence in the light most favorable to the government, a reasonable jury could have found that Baker was in possession of the baggies of crack cocaine and dropped those baggies while fleeing from the police. The arresting officers testified that although he was compliant at first, Baker immediately fled from the officers in response to Officer Aikman's movement to pat him down to search for weapons or drugs. Officer Aikman testified that Baker was within his sight during the entire chase and, though he could not see Baker's hands the entire time, Baker appeared as though he was attempting to retrieve something from his front pants pocket as they were approaching the fence. When Officer Aikman immediately returned to the area where he had tackled Baker along the collapsed fence, he quickly spotted the two baggies on the ground. Baker ignores Keomala's testimony almost entirely. Even setting aside the disputed prior bad acts evidence, Keomala testified that Baker told her he was on the "Hill" the night of his arrest "posted up," and explained that she understood this to mean that he was waiting to exchange drugs for money. Additionally, Office Jack Turner, an expert witness in the distribution of crack cocaine, testified that 25.2 grams of crack cocaine is "a distribution sized amount." *See United States v. Maholias*, 985 F.2d 869, 879 (7th Cir. 1993) ("intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use"). Between the arresting officers' testimony, Keomala's testimony regarding what Baker told

her both before and after his arrest, and the quantity of drugs found, the government presented enough direct and circumstantial evidence that a reasonable jury could have found Baker guilty.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM Baker's conviction and sentence.