IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 28, 2015 at Knoxville

## STATE OF TENNESSEE V. DONALD JOSEPH POWELL

**Appeal from the Circuit Court for Williamson County**
**No. I-CR086639B     Michael W. Binkley, Judge**

_____

**No. M2014-01132-CCA-R3-CD – Filed June 8, 2015**

_____

Defendant, Donald Joseph Powell, was convicted at a bench trial of attempted aggravated burglary.  On appeal, he argues that the trial court erred in admitting evidence of prior aggravated burglaries committed by Defendant and that the testimony of his co-defendant was not sufficiently corroborated to sustain a verdict of guilt.  Upon thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Georgia Felner (on appeal) and Drew Justice (at trial), Franklin, Tennessee, for the appellant, Donald Joseph Powell.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Kim R. Helper, District Attorney General; Tammy Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

_Factual and Procedural Background_

This is a direct appeal from Defendant's conviction for attempted aggravated burglary.  Both Defendant and his co-defendant, Alyssa Star Cartwright, were indicted by the Williamson County Grand Jury for the attempted aggravated burglary of the home of Charles and Stephanie Warner on May 25, 2012.  Ms. Cartwright pled guilty and agreed to testify against Defendant.

Pre-Trial Hearing

Prior to trial, the State filed a motion in limine regarding the prosecution's proposed introduction of evidence of Defendant's prior aggravated burglaries, under Tennessee Rule of Evidence 404(b), to show Defendant's intent in connection with the present charge. The trial court held a hearing, during which the State presented the testimony of Candice Nicole Stone, Defendant's ex-girlfriend and co-defendant in 18 aggravated burglary or theft convictions in 2011, for which she served 29 months' imprisonment. Ms. Stone testified that during these burglaries, the routine was for her to approach the front door and knock while Defendant stayed in the car. If someone answered the door, Ms. Stone would make up an innocuous excuse for her presence, such as she was looking for her lost dog. If no one answered the door, she would return to the car and inform Defendant. Defendant would then break into the home, usually through a side window or back door. Ms. Stone would then proceed to steal smaller items, like jewelry, while Defendant took the larger items, like televisions.

The State summarized the expected testimony of Stephanie Warner, the victim, and Ms. Cartwright, the co-defendant in this case. It was anticipated that Mrs. Warner would testify that a woman approached her house on the day in question, knocked loudly and repeatedly, and jiggled the front doorknob. Mrs. Warner chose not to answer the door because her house was in disarray. Mrs. Warner saw the woman, accompanied by a man in a blue shirt, walk around toward the back of the house. Mrs. Warner then saw her back door being beaten aggressively, causing her to become afraid for herself and her children. She retrieved a gun, raised the blinds on the back door, and confronted the woman. The woman said she was there to buy a chaise lounge. Mrs. Warner ordered the woman to leave her property.

It was anticipated that Ms. Cartwright would testify that, on the date in question, Defendant showed her a picture of a chaise lounge that he wanted to buy. The two then drove to the Warner home, where she proceeded alone to the front door. She knocked repeatedly but received no answer. She returned to the vehicle, and then both she and Defendant went to the back door. She knocked on the back door while Defendant was standing off to the side. Defendant began to pound on the door with great force, then walked away. Ms. Cartwright was then confronted by Mrs. Warner displaying a handgun.

The State anticipated that it would admit into evidence letters written by Defendant to Ms. Cartwright during their subsequent incarceration on this charge. In those letters, Defendant proclaimed his innocence, claimed that he was only at the house to pick up a couch, and indicated that he went to the rear of the house because he had to urinate. The State contended that these letters directly put Defendant's intent at issue, in addition to the fact that the crime charged was an attempt.

At the end of the hearing, the trial court ruled that there was clear and convincing evidence, with the admission of certified copies of convictions from Williamson and Rutherford Counties, that Defendant committed the prior burglaries with Ms. Stone; that the evidence was being offered to show Defendant's intent; and that the potential for unfair prejudice did not outweigh the probative value of the evidence, conditioned upon the actual proof at trial being consistent with the anticipated testimony summarized at the hearing.

Bench Trial

On November 8, 2013, Defendant waived his right to a jury trial and proceeded to a bench trial that same day. At trial, the following proof was adduced:

Mrs. Warner testified that on May 25, 2012, she returned home with her three small children around two o'clock in the afternoon. Shortly after putting her youngest child down for a nap, Mrs. Warner looked out a window and noticed a woman approaching her front door. Initially, Mrs. Warner thought this woman was a friend. Concerned by the cluttered condition of her house, Mrs. Warner decided to pretend no one was home and instructed her oldest daughter not to answer the door.

The woman approached the door and began knocking loudly and ringing the doorbell incessantly. Mrs. Warner estimated this lasted for about two minutes. The woman was also jiggling the front doorknob and peering through the beveled glass on the door. Becoming suspicious, Mrs. Warner called her husband, who was a police officer. He instructed her to go get their gun, and she did so. She looked out of a window overlooking the driveway and saw a man wearing a bright, turquoise-blue shirt and plaid shorts walking toward the back of the house.

As Mrs. Warner approached the back door, she heard a loud banging, as if the door were being kicked or shoved hard. The door was made out of solid wood with a window in the middle. Mrs. Warner noticed that the door appeared to be buckling under the assault and that the blinds over the window portion were swaying. Mrs. Warner gave the phone to her daughter and instructed her to go hide. Mrs. Warner then opened the blinds and displayed her gun to the people outside. Mrs. Warner saw the woman at the back door and the man's turquoise-blue shirt sleeve at the edge of her line of sight. The woman screamed, "She's got a gun. She's got a gun. Put the gun up. She's got a gun." Mrs. Warner then stepped outside. Mrs. Warner became concerned because she could not see the man and did not know where he was. The woman pulled out a piece of paper and nervously said that she was there to buy a chaise lounge. Mrs. Warner ordered the two off of her property.

As the two left, Mrs. Warner wrote down the truck's license plate number. Investigation of the license plate number revealed that the truck belonged to an older

man, but that Ms. Cartwright was associated with the same address as the truck's owner. Mrs. Warner found Ms. Cartwright's Facebook profile, which contained a picture of Defendant with the same bald head and wearing the same turquoise-blue shirt and plaid shorts that Mrs. Warner observed during the incident. Mrs. Warner identified both Ms. Cartwright and Defendant as the two people she had seen at her home that day. Mrs. Warner testified that neither Ms. Cartwright nor Defendant had her consent to enter her home that day.

Ms. Cartwright testified that on the morning of May 25, 2012, she dropped her daughters off at a friend's birthday party and then went to the home of Defendant, her boyfriend. Defendant showed her a picture of a chaise lounge, which he said he wanted to buy for his bedroom. Ms. Cartwright agreed to drive him to Cox Road, where, according to the address written in Defendant's handwriting beneath the picture, the chaise lounge was purportedly being sold.

Ms. Cartwright was driving her father's truck. Ms. Cartwright backed the truck into the driveway of the Warner residence on Cox Road. She then left Defendant in the truck and walked up to the front door. Ms. Cartwright denied knocking loudly, jiggling the doorknob, or peering through the window, but she did admit that she rang the doorbell five or ten times. Concluding no one was home, Ms. Cartwright returned to the truck and informed Defendant. Defendant told her to try the back door, and the two proceeded to the back of the house.

Ms. Cartwright testified that initially she knocked on the back door. She explained that, at this time, the Defendant was off to the side "meddling," and she began to suspect his true intentions. When Ms. Cartwright again received no response at the door, Defendant began hitting the door very hard with his hand for one or two minutes. Ms. Cartwright characterized Defendant's actions as "ass whipping" the door. At that point, Ms. Cartwright's understanding of their purpose for being at the house changed: she believed that they were there to burglarize it. Though Ms. Cartwright claimed that her intent was innocent up until that point, she admitted that she was willing to follow Defendant inside the house to commit the crime.[1]

Ms. Cartwright explained that her understanding of Defendant's intent was based upon how hard he was hitting the door and upon her prior experiences burglarizing several homes with him in 2010. During those prior burglaries, Ms. Cartwright would approach the front door to determine if anyone was at home. If someone answered the

---

[1] The trial judge asked Ms. Cartwright several questions in an attempt to clarify what her intent was during the incident, urging her to "quit beating around the bush, either tell the truth or stick to the story." Ms. Cartwright repeatedly denied that she intended to commit a burglary before she and Defendant went to the Warner residence, claiming that she intended only to buy the chaise lounge. Ms. Cartwright explained that her understanding of Defendant's intent changed when he started "ass whipping" the back door.

door, she would provide an innocent excuse for her presence. She explained that it was "more believable" if a woman knocked on the door and gave the excuse of looking for a dog or needing directions. If there was no answer, she would inform Defendant, who had been waiting in the car, and he would proceed to the back of the house to break in. They would usually go in the morning when fewer people were home. She had done this with Defendant five to eight times in the past.

After pounding on the door, Defendant walked back toward the truck. Ms. Cartwright then saw Mrs. Warner open the blinds and display her gun. Ms. Cartwright did not recall shouting "she's got a gun." Defendant was back at the truck by this point. Ms. Cartwright tried to explain to Mrs. Warner that she was there to buy a chaise lounge and showed her the picture. Mrs. Warner told Ms. Cartwright that she had the wrong address and told her to leave the property. Ms. Cartwright returned to the truck and left with Defendant. Ms. Cartwright recalled that, as she drove away, she was very upset with Defendant over the incident because they did not need to burglarize the house for money. While she could not recall the specifics of their conversation in the truck, Ms. Cartwright explained that it confirmed her belief that Defendant intended to burglarize the house.

After the incident, Ms. Cartwright and Defendant were informed by family members that they were on the news and that there was a warrant for their arrests. Defendant and Ms. Cartwright picked up some clothes from his mother and fled the state. They spent the night with Defendant's grandmother in Indiana. Then they returned to Tennessee, got some pills, and stayed a night in a motel in Nashville. While at the motel, Ms. Cartwright and Defendant discussed their story: that they were just at the Warner residence to buy a chaise lounge. Defendant commented to Ms. Cartwright that "it could have been a good lick." Ms. Cartwright understood this to mean that they could have made good money from the theft of property. Ms. Cartwright explained that Defendant had used this same phrase in connection with prior burglaries.

Ms. Cartwright pled guilty to attempted aggravated burglary. Part of her plea agreement with the State was to testify truthfully against Defendant. Ms. Cartwright admitted that she initially gave a different rendition of events to the police and in a letter to Defendant's mother, telling the story that they were just there to purchase the chaise lounge. However, Ms. Cartwright stated "that's not the truth. . . . The truth was the house was going to be burglarized if [Mrs. Warner] wouldn't have come to the door."

After Defendant and Ms. Cartwright were arrested, Defendant wrote several letters to Ms. Cartwright from jail. Detective Grant Benedict, who investigated the case, read from several letters that he intercepted which referenced the incident at the Warner residence. In the letters, Defendant proclaimed that he was innocent. Specifically, Defendant wrote in one letter "Looking for a f---ing chair got us put in jail and got me put on TBI Most Wanted." In another letter, Defendant wrote:

Man, that is some real bull crap. It says that the woman said that she has a gun and we ran from the scene. When I figured no one was home, I went to the side of the truck to take a leak. . . . I never seen no woman. That Grant Benedict wrote up the warrant and made it sound as if a crime was committed. I'm pissed because I've never been in jail for something that I didn't do.

In a third letter, Defendant wrote that Ms. Cartwright should "[b]e sure that you remember that you tell them that the reason you went to the back of the house is because you heard or seen the lady moving around inside."

Additionally, the State presented the testimony of Ms. Stone, who had earlier testified at the pre-trial hearing. Ms. Stone testified that Defendant was her ex-boyfriend and that she had committed 20 or more burglaries with him in Williamson and Rutherford Counties in 2011. During those burglaries, she would first knock on the front door to see if anyone was home while Defendant waited in the car. If no one was home, she would tell Defendant, and he would proceed to break in through a door or window. On the other hand, if someone answered the door, she would come up with an innocent reason to explain why she was at the house, such as she was looking for her lost dog. She explained that it was less suspicious for a female to knock on the door first. She explained that they would usually commit the burglaries in the morning, when people would be at work, but no later than 4:00 or 5:00, when people would be coming home. On cross-examination, Ms. Stone stated that she had never used a prop, such as a picture, to explain her presence. Part of Ms. Stone's plea agreement in her own aggravated burglary and theft cases was to testify truthfully against Defendant in this case.

Defendant testified on his own behalf. He testified that on May 25, 2012, Ms. Cartwright showed him a picture of a chaise lounge and suggested that he purchase it for his bedroom. He claimed that there was no address written beneath the picture at the time, but that he later wrote the address on the paper as they drove away from the Warner residence at Ms. Cartwright's suggestion. Defendant contended that he did not intend to burglarize the house but was simply following Ms. Cartwright to get the chaise lounge. According to Defendant, he realized that Ms. Cartwright intended to break into the house when she started trying to force open the back door, not the other way around. Defendant insisted that he walked away from the back door to stay out of trouble and that he never saw Mrs. Warner or her gun. He admitted that he and Ms. Cartwright fled the state after finding out that they were wanted by the police. He denied saying that he "could have hit a good lick."

Defendant further called Charles Warner, Mrs. Warner's husband. Mr. Warner was not home during the incident. However, he had to fix some damage to his front door as a result of this incident.

The trial court found Defendant guilty of attempted aggravated burglary. The trial court held a sentencing hearing on March 4, 2014. Defendant was sentenced to 12 years' incarceration as a career offender. Defendant filed a motion for new trial, which was denied by the trial court on June 3, 2014. Defendant then filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court erred in admitting testimony from both Ms. Cartwright and Ms. Stone as to prior aggravated burglaries committed by Defendant. Additionally, Defendant alleges that the testimony of Ms. Cartwright, his accomplice, was not sufficiently corroborated to sustain a verdict of guilt. We will address each issue in turn.

*I. Evidence of Prior Burglaries*

The general rule is that evidence of a defendant's prior criminal conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). "The terms of this rule establish that character evidence cannot be used to prove that a person has a propensity to commit a crime." *State v. McCary*, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003) (citing *State v. Adkisson*, 899 S.W.2d 626 (Tenn. Crim. App. 1994)). Rule 404(b) has been described as a rule of exclusion rather than inclusion, and "[t]rial courts have been encouraged to take a restrictive approach of Rule 404(b) because 'other act' evidence carries a significant potential for unfairly influencing a jury." *State v. Jones*, 450 S.W.3d 866, 891 (Tenn. 2014) (internal quotation and alteration omitted) (quoting *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008)).

However, evidence of other acts may be admissible for other non-propensity purposes, such as "to establish motive, intent, identity, absence of mistake, or common plan or scheme," or "contextual background." *State v. Little*, 402 S.W.3d 202, 210 (Tenn. 2013); *see* Tenn. R. Evid. 404(b), Advisory Comm'n Cmts. Other act evidence may be admitted for these purposes only after the following requirements have been met:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b) (2013).

If the trial court has substantially complied with the procedure mandated by the Rule, a trial court's decision to admit or exclude evidence under Rule 404(b) is reviewed under an abuse of discretion standard. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). This standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). However, the standard does not immunize a lower court's decision from appellate scrutiny. *Id.* "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in injustice to the complaining party." *Jones*, 450 S.W.3d at 892. Where the trial court has failed to substantially comply with the procedural dictates of Rule 404(b), the standard of review is de novo. *State v. Mallard*, 40 S.W.3d 473, 486 n.13 (Tenn. 2001) (citing *DuBose*, 953 S.W.2d at 652-53)).

In this case, the trial court held a pre-trial hearing with regard to the testimony of Ms. Stone. The court found proof of the other crimes to be clear and convincing with the admission of the certified judgments from Williamson and Rutherford Counties. The court stated on the record that the material issue was Defendant's intent and ruled, subject to the actual proof presented at trial, that the danger of unfair prejudice did not outweigh the probative value of the evidence. *See State v. Gilley*, 173 S.W.3d 1, 6 (Tenn. 2005) ("[T]rial courts must be cognizant that if pretrial evidentiary rulings are made, they may need to be reconsidered or revised based on the evidence presented at trial."). On appeal, Defendant argues that there were material differences between the State's summary of the anticipated proof and the actual testimony presented at trial, such that the trial court should have reconsidered its earlier ruling. Specifically, Defendant argues that the State said that the proof would show that Defendant was "stopped by Mrs. Warner at the door" when the proof at trial was actually that Defendant was walking away from the door by the time Mrs. Warner raised her blinds. We find this alleged difference to be trivial, as it impacted neither the probative value nor the potential prejudicial effect of the testimony as to Defendant's prior burglaries. Additionally, Defendant did not renew his objection to Ms. Stone's testimony at trial and ask the trial court to reconsider its ruling in light of the actual testimony presented. *See* Tenn. R. App. P. 36(a).

With regard to the testimony of Ms. Cartwright, the trial court did not conduct a separate hearing, and none was requested by Defendant. *See* Tenn. R. Evid. 404(b)(1)

("The court *upon request* must hold a hearing outside the jury's presence" (emphasis added)). Defendant complains on appeal that the trial court did not state its findings on the record when ruling on the admissibility of Ms. Cartwright's testimony; however, he did not request at trial that such be done. *See* Tenn. R. Evid. 404(b)(2) ("The court . . . must *upon request* state on the record the material issue, the ruling, and the reasons for admitting the evidence" (emphasis added)). Even without such a request, the trial court did clarify its ruling when it stated in response to a later objection by Defendant, "Let me make it clear for the record, I believe a prejudicial effect does not outweigh the probative value on the issues that we've discussed this morning [during the pre-trial hearing]. Period." In other words, the trial court applied the same rationale to admitting Ms. Cartwright's testimony as it had to admitting Ms. Stone's testimony. We conclude that the trial court substantially complied with the requirements of Tennessee Rule of Evidence 404(b) with regards to the testimony of both Ms. Stone and Ms. Cartwright, and we will review its decision to admit the evidence of Defendant's prior burglaries under an abuse of discretion standard. *DuBose*, 953 S.W.2d at 652.

The trial court was correct that intent was a material issue in this case. Defendant was charged with attempted aggravated burglary, and intent is an element of criminal attempt. *See* T.C.A. § 39-12-101(a)(3) ("A person commits criminal attempt who . . . *acts with intent* to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward commission of the offense" (emphasis added)). Because the State was required to prove that Defendant had the specific intent to commit an aggravated burglary, intent was a material issue in this case regardless of the defense asserted at trial. *See State v. Donald Mickens*, No. 2009-00586-CCA-R3-CD, 2010 WL 2697164, at *15 (Tenn. Crim. App. July 8, 2010) (quoting *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994)) ("[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise.").

Additionally, Defendant's intent was a contested issue at trial. Defense counsel best summarized the defense's theory of the case in his opening argument: Defendant was a passenger just "along for the ride." In other words, Defendant's main argument was that he did not intend to commit an aggravated burglary but was just accompanying Ms. Cartwright—who may or may not have intended to commit a burglary herself. Additionally, the State introduced letters written by Defendant to Ms. Cartwright proclaiming his innocence. He claimed that he was at the Warner house to buy a couch and that, rather than fleeing from Mrs. Warner, he had walked away from the door in order to urinate. These letters further call into question the Defendant's intent at the time of the incident. Therefore, the main inquiry in this case was not whether Defendant was at the Warner residence, but *why* Defendant was at the Warner residence.

The question then becomes whether the testimony regarding the manner in which Defendant committed prior burglaries is sufficiently probative of his intent to commit a burglary in this case. As one panel of this Court has recognized, "admission of prior act evidence may be necessary in cases involving specific intent crimes" and, in fact, "'prior acts evidence may often be the only method of proving intent.'" *Donald Mickens*, 2010 WL 2697164, at *14-15 (quoting *Johnson*, 27 F.3d at 1192); *see also United States v. Baker*, 655 F.3d 677, 682 (7th Cir. 2011) (noting that "when a defendant is charged with a specific intent crime, prior bad acts may be admitted if the act demonstrates how the defendant's behavior was purposeful"). This Court has previously admitted prior act evidence to prove a defendant's intent. *See State v. Johnson*, 366 S.W.3d 150, 159 (Tenn. Crim. App. 2011) (admitting evidence of a prior shoplifting to prove the defendant's intent to commit aggravated robbery of the same merchant); *Donald Mickens*, 2010 WL 2697164, at *15-17 (allowing testimony of other drug sales to show the defendant's intent to sell drugs on dates in question); *but see State v. Leslie Brian Willis*, No. 01C01-9802-CC-00068, 1999 WL 510602, at *5 (Tenn. Crim. App. July 15, 1999) (holding that evidence of a prior rape was not admissible to prove the defendant intended to rape the victim because there was "no logical progression nor any cause-and-effect relationship, only the extrapolation that, if the defendant intended rape of a female in 1985, he must be the sort of person who intended to rape [the victim]"), *perm. app. denied* (Tenn. Oct. 23, 2000). Other courts have also held that proof of substantially similar past crimes is admissible to show a defendant's intent to commit the present crime. *See, e.g.*, *United States v. Mills*, 1 F.3d 414, 418 (6th Cir. 1993) (holding that the defendant's "involvement in prior, similar burglaries proved her intent, knowledge, and ongoing plan with [her codefendant] to burglarize drugstores"); *Baker*, 655 F.3d at 680-82 (allowing testimony as to other instances in which the defendant possessed crack cocaine with intent to deliver to prove defendant's intent to deliver in present case).

In this case, the evidence was not just the fact that Defendant had been convicted of aggravated burglaries in the past, which would lead to the improper propensity inference of "once a burglar, always a burglar."[2] Instead, the evidence was being used to show that Defendant committed those prior burglaries in a particular manner and that when he engaged in similar activities in the present case, it is reasonable to infer that he

---

[2] In *State v. Alfred F. Hampton*, No. 01C01-9301-CR-00041, 1994 WL 17063, at *3 (Tenn. Crim. App. Jan. 20, 1994), the prosecution presented evidence of the defendant's prior convictions of attempted burglary and attempted larceny to show the defendant's intent in a felony theft case by having the clerk read the convictions into the record. This Court commended the trial court for scrupulously attempting to follow the procedural requirements of Rule 404(b), including finding that the evidence was relevant and admissible on the issue of intent. However, this Court held that it was error to admit the fact of convictions alone without evidence of the surrounding facts and circumstances, stating "[p]roof of the fact of th[ese] conviction[s] as presented here did nothing more than show that the defendant is the kind of person who would not scruple to commit the offense for which he is charged." *Id*. at *3-4 (quoting *State v. George Allen Fletcher*, No. 86-114-III, 1987 WL 12058, at *4 (Tenn. Crim. App. June 10, 1987)). In this case, the State properly presented the underlying facts and circumstances of Defendant's prior convictions for aggravated burglary through the testimony of Ms. Stone.

intended to commit an aggravated burglary. As explained by the Second Circuit in *United States v. Klein*:

> Where, as here, the evidence is susceptible of the interpretation that the acts alleged to constitute the crime were innocently performed and the vital issues of knowledge and intent are keenly disputed, it is well within the trial judge's discretion to permit the Government, on a properly limited basis, to introduce evidence of prior similar offenses demonstrating the unlikelihood that the defendant was a mere innocent, unknowing bystander.

340 F.2d 547, 549 (2d Cir. 1965) (allowing testimony that a third party had previously split the proceeds of stolen traveler's checks with the defendant to show the defendant's intent with regard to checks in case at trial). We conclude that the manner in which Defendant committed the prior burglaries was highly probative of his intent to commit a burglary under substantially similar circumstances.

Defendant argues that the prior conduct lacked a common *modus operandi* with the present conduct that was so similar as to be able to provide reliable evidence of his intent, pointing to minor differences between the past burglaries and the one at bar such as the time of day and the excuse used when someone turned out to be home. Our supreme court has held, when the material issue for which the evidence is being admitted under Rule 404(b) is identity, that the prior bad act and the present case must share a "highly distinctive common mark" in order to be considered "signature crimes." *Jones*, 450 S.W.3d at 895 (quoting *Bunch v. State*, 605 S.W.2d 227, 231 (Tenn. 1980)); *see also Harris v. State*, 227 S.W.2d 8, 11 (Tenn. 1950) ("Many men commit murder, but Jack the Ripper used his knife in a manner so peculiar that when his crimes were viewed together there could be little doubt that they were committed by the same man. Merely the fact, however, that a series of such crimes may be committed with a knife will not render them unusual enough to identify the perpetrator of one as the perpetrator of the others."). As the court explained in *Bunch*:

> [I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no *inference of identity* can arise. An inference of identity from prior crimes can only arise when the element of the prior offense and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offense[] also committed the offense on trial.

605 S.W.2d at 230 (emphasis added). Defendant has urged this Court to extend this additional limitation on 404(b) evidence to other non-propensity uses, such as intent. We decline to do.

Unlike identity, when the material issue is intent, the facts and circumstances connecting the two crimes need not be so unique and distinctive as to constitute signature crime or distinct *modus operandi*. Rule 404(b) limits "proving action" through a showing of other bad acts. When proving identity through 404(b) evidence, the trier of fact is making the most basic of determinations: whether the defendant committed the action in the first place. Intent, on the other hand, comes into play after the defendant has been shown to have committed the action. Under these circumstances, the prior act evidence merely provides context to interpret the defendant's actions. In fact, our supreme court has on occasion divided permissible uses of 404(b) evidence into three categories—"(1) the use of 'motive and common scheme or plan' to establish identity; (2) to establish the defendant's intent in committing the offense on trial; and (3) to 'rebut a claim of mistake or accident if asserted as a defense,'" *State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005) (quoting *McCary*, 922 S.W.2d at 514)—implying that the requirement of a "common scheme" does not apply when the prior act evidence is being used to show a defendant's intent. *Contra United States v. Bell*, 516 F.3d 432, 443-44 (6th Cir. 2008) ("Unless the past and present crime are related by being part of the same scheme of drug distribution or by having the same *modus operandi*, the fact that a defendant had intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to possess and distribute drugs."). We conclude that the State was not required to prove a unique *modus operandi* between the past crimes and the one at bar in order to admit the evidence on the issue of intent.

Finally, we must determine whether the probative value is outweighed by the danger of unfair prejudice. As recognized by our supreme court, evidence of prior bad acts is "undoubtedly . . . prejudicial"; however, "the issue is whether the evidence was *unfairly* prejudicial." *DuBose*, 953 S.W.2d at 654-55 (emphasis in original). The term "unfair prejudice" has been defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. We recognize that the similarities between the prior crimes and the case at bar raise not only their probative value, but also their potential prejudicial effect. "When the other crime is similar to the charged offense in the pending case, the danger of unfair prejudice is especially prevalent." *Jones*, 450 S.W.3d at 894; s*ee also Donald Mickens*, 2010 WL 2697164, at *11 (citing *McCary*, 119 S.W.3d at 243) ("[W]e recognize the greater likelihood of a prejudicial result when, as here, the acts are nearly identical to the offenses for which a defendant is on trial.").

If this case had been tried before a jury, the balancing of probative value against potential prejudicial effect might have been a closer question. *See Jones*, 450 S.W.3d at 891 (quoting *Old Chief v. United States*, 519 U.S. 172, 181 (1997)) ("'[T]he risk that a *jury* will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserved punishment—creates a prejudicial effect that outweighs ordinary relevance'" (emphasis added)). However, in a bench trial, the judge is presumed to follow the law and to not consider improper evidence. *See, e.g.*,

*United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) ("[W]e have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."); *Banks v. State*, 347 S.W.3d 31, 35 (Ark. 2009) ("[I]n cases tried without a jury there is a presumption that a trial judge will consider only competent evidence. . . [which] is overcome only when there is an indication that the trial judge gave some consideration to the inadmissible evidence."); *see also Glenn Davis v. Charles Bowers*, No. E2011-00295-COA-R3-CV, 2012 WL 762442, at *13 (Tenn. Ct. App. Mar. 9, 2012) ("[A] trial court is well qualified to determine what weight, if any, should be given to evidence."). The trial judge in this case acknowledged that admitting the evidence for propensity purposes was improper. There is no evidence in the record that the trial judge considered the evidence other than for its limited purpose of showing Defendant's intent.[3] Therefore, we conclude that the trial court did not abuse its discretion in determining that the danger for unfair prejudice did not outweigh the probative value and admitting the evidence.

## II. Corroboration of Accomplice's Testimony

Defendant argues that the testimony of his accomplice, Ms. Cartwright, is uncorroborated and, therefore, there is insufficient evidence to sustain the verdict of guilt. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In a bench trial, the judge is the trier of fact, and "the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." *State v. Farrar*, 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011) (quoting *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999)); *see also State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). The trial court's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

---

[3] In ruling on the pre-trial motion, the trial court acknowledged that the distinction between intent and propensity in this case was a close question:

> It looks like propensity, smells like it, kind of walks like it, but it's not. That's not what it's being used for. It's being used for the issue of intent. And in this State, any way, it's unusual to see that, there's very little case law on this; so it sure looks like propensity, but it's not. That's not the stated purpose of the evidence. The stated purpose of the evidence is intent.

We commend the trial judge for his careful consideration of this issue, and the record is replete with evidence that the trial judge was careful not to let any impermissible propensity evidence cloud his judgment.

The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *Bland*, 958 S.W.2d at 659). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn.2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009). A guilty verdict may be predicated on circumstantial evidence alone, and circumstantial evidence need not remove every reasonable hypothesis except that of guilt. *Dorantes*, 331 S.W.3d at 380.

A person commits aggravated burglary who, without consent of the owner, enters a habitation with the intent to commit a felony, theft, or assault. T.C.A. § 39-14-402, -403. "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: . . . acts with intent to complete a course of action or cause a result that would constitute the offense under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward commission of the offense." T.C.A. § 39-12-101(a)(3).

"When the only proof of a crime is the uncorroborated testimony of one or more accomplices, the evidence is insufficient to sustain a conviction as a matter of law." *Jones*, 450 S.W.3d at 888 (citing *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013)). An accomplice is "one who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime." *Id*. The test for whether a witness qualifies as an accomplice is whether he or she could be indicted for the same offense charged against the defendant. *Id*. Though Ms. Cartwright downplayed her own culpability in this case during her testimony, she certainly qualifies as an accomplice because she was charged as a co-defendant and pled guilty to attempted aggravated burglary.

Although a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice, the longstanding rule has been that only slight corroboration is required. *See Hawkins v. State*, 469 S.W.2d 515, 520 (Tenn. Crim. App. 1971). It is well-settled that "corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with

the commission of the crime charged." *Jones*, 450 S.W.3d at 888 (quoting *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001)) (emphasis omitted). In other words,

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. . . . It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001).

In this case, the testimony of the victim, Mrs. Warner, corroborates the testimony of the accomplice, Ms. Cartwright. Mrs. Warner saw Defendant walking from the truck parked in her driveway toward the back of her house and she noticed that he was wearing a distinctive turquoise-blue shirt. When she approached her back door and looked out the window, she saw a turquoise-blue shirt sleeve in the area of her back door at the edge of her line of sight. Through her investigation on Facebook, Mrs. Warner was able to identify Defendant from pictures where he was wearing the same turquoise-blue shirt. Additionally, in Defendant's letters to Ms. Cartwright, though he challenges the accuracy of Mrs. Warner's identification of him, he admits that he was present at the Warner home. These independent facts establish Defendant's identity as the man who accompanied Ms. Cartwright to the Warner home on the day in question.

Defendant argues that the only evidence of his actions at the back door and his intent to burglarize the home is the uncorroborated testimony of his accomplice. Ms. Cartwright testified that Defendant knocked on the door really hard and that, based on her prior experiences burglarizing homes with Defendant, she believed that he intended to break in based on how hard he was knocking. Mrs. Warner testified that, even though she could not see who was knocking on the back door, the banging was hard enough that it made the blinds shutter and the door start to buckle. There was clearly more force being used at the back door than Ms. Cartwright had used at the front door when she incessantly rang the doorbell and jiggled the doorknob. Next, Mrs. Warner testified that she told her daughter to hide before she raised the blinds to confront the people at her back door. Ms. Cartwright testified that, even though she did not hear anything inside the house, Defendant walked away from the door before the blinds were raised. It is reasonable to assume that Defendant heard Mrs. Warner inside the house and fled back to the truck.

Mrs. Warner's testimony further corroborates Ms. Cartwright's testimony with regard to what happened after the blinds were raised. Mrs. Warner pointed her gun at Ms. Cartwright through the window and told her to leave, catching a glimpse of

Defendant's shirtsleeve. Mrs. Warner stepped outside, but Defendant was gone by that point. Ms. Cartwright nervously said she was there to buy a chaise lounge and showed Mrs. Warner a picture. Mrs. Warner told her she was at the wrong address and again told her to leave. Our supreme court has held that corroborative evidence can include testimony as to events before, during, and after the crime. *See Jones*, 450 S.W.3d at 889. Therefore, we conclude that Ms. Cartwright's testimony was amply corroborated.

Defendant argues that all of the evidence relating to his intent in this case "require an assumption about [Defendant's] thoughts." While this may be true, this does not render such evidence insufficient to sustain a verdict of guilt. Rarely can the mental state of a defendant be proven by direct evidence; a trier of fact must often rely on circumstantial evidence to infer the intent of a defendant from "all the circumstances of the case in evidence." *State v. Inlow*, 52 S.W.3d 101, 105 (Tenn. Crim. App. 2000). As one panel of this Court has noted, "Other than an accused stating what his or her purpose, intent, or thinking was at the relevant times, the trier of fact is left to determine the mental state by making inferences drawn from the surrounding circumstances found by it to exist." *State v. Harold Wayne Shaw*, No. 01C01-9312-CR-00439, 1996 WL 611158, at *3 (Tenn. Crim App. Oct. 24, 1996). Ms. Cartwright testified that when she and Defendant learned that warrants had been taken out against them for the attempted burglary of the Warner home, they fled the state. "[F]light and attempts to evade arrest are relevant as circumstances from which, when considered with other facts and circumstances in evidence, [the trier of fact] can properly draw an inference of guilt." *Dorantes*, 331 S.W.3d at 388 (quoting *State v. Zagorski*, 701 S.W.2d 808, 813 (Tenn. 1985)). Additionally, while on the run, Defendant lamented that the Warner house "could have been a good lick," which Ms. Cartwright understood to mean that they could have made money if they had been able to take any property. The trial court, in reviewing the evidence prior to rendering his verdict, accredited this testimony of Ms. Cartwright as it related to Defendant's intent to burglarize the Warner home. The trier of fact is free to accept portions of a witness's testimony and reject others—such as, in this case, Ms. Cartwright's denial of her own intent to burglarize the home. *See State v. Adams*, 45 S.W.3d 46, 56 (Tenn. Crim. App. 2000). We conclude that there was more than sufficient evidence in this case for a reasonable trier of fact to conclude that Defendant was guilty of attempted aggravated burglary.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

-16-